Good morning, Your Honors. Elizabeth Falk with the Federal Defender on behalf of Mr. Webber. Howard Webber is definitely guilty of aiding and abetting mail fraud and even tax fraud, but he did not commit aggravated identity theft. Those five charges are the only reason this case even went to trial, and I urge the panel to please consider this case as an opportunity to bring some much-needed judicial reason and common sense to this statute, which is increasingly becoming abused. This is a case where Mr. Webber was in prison, and he consulted with inmates about the opportunity to get free money from the government. He gave them a form and said, If you want free money from the government, send your Social Security number and your information to my buddy in California. He'll file a tax return for you, and you can get the refund. So the buddy, Mr. Berkovich, do you admit that he violated the statute in terms of the forgery that he did on the forms? The government's clinging to that. I think there's an argument that he did not, even in the context of use, because he did not hold himself out to be those inmates. He was acting as their agent. I don't think that — Well, how do we know that? I mean, so it seems to me perhaps the defense could have asked for an instruction that in order to commit forgery, you have to hold yourself out, and this wasn't a forgery because he wrote CB. But the jury wasn't given that instruction because the defense didn't ask for it, and I feel like we're not sure what the jury thought about what Mr. Berkovich meant when he signed, because no one asked them to ask that question or answer that question. Well, there wouldn't have been an opportunity in the context of specifically in the forgery to ask for that. The defense — But if the identity theft is based on forgery, which I think under Blixt, we have to assume it can be, right? So then your only possible difference is that Blixt is different because in Blixt, the person didn't write little initials next to the signature, and somehow these little initials mean he wasn't really impersonating the person, even though he signed their name. I mean, I think that that's what you're holding on to, is the little CB. Am I right? I mean, that is definitely part of it. It's also, in Blixt, she was not acting as an agent. The person whose signature she forged had no idea what was going on. In this case, by sending the form to Mr. Berkovich, the inmates were authorizing him to file a tax return. But you can't authorize someone to file a fraudulent tax return, not legally. And so then, so then you have a problem with Asuna. Well, Asuna is a very different situation, because in that case, even though there was consent, the brother was holding himself out to be another person. That's what the Ninth Circuit wanted to close the loophole on, is we don't, we don't, we want to invest in not allowing people to pretend to be other people. But Mr. Berkovich was signing someone else's name. And you're saying the difference is that he had their consent, but the brother and Asuna gave consent, too. The difference is that, well, there's two parts, because Mr. Weber is one step removed from Mr. Berkovich, and that has to do with the aiding and abetting liability. But with respect to the pure question of whether Berkovich committed aggravated identity theft here, he is acting as an agent in doing that CB. And that is a very different kind of consent than somebody passing off their brother to allow them to pretend to be somebody else. Mr. Berkovich was not. But why? I mean, why is it a different kind of consent? So if the brother says, yeah, you can use my passport, you can pretend to be me, then why is that different than the person filing the taxes saying you can sign my name and pretend to be me and get some of the money? Because Mr. Berkovich isn't pretending to be that person. Isn't the difference that it's okay to file a tax return for another person if the passport? Exactly. Couldn't have said it better myself. And so in this case, we even have one step removed. We have Mr. Weber now being convicting of aiding and abetting that act when he didn't procure the information. But let's put that aside for the second thing, just to understand whether this use for Berkovich counts or not. Because I think that's what you're asking us to write an opinion about, saying that being an agent doesn't count under Blixt and Asuna. It's somehow different. Right? That's what you'd like us to say? That would be the best form of opinion. But in order to reverse these charges against Mr. Weber, actually the aiding and abetting aspect to that is even more important. I'm asking this Court to reverse Mr. Weber's convictions. Ultimately, whether this Court finds that Mr. Berkovich committed aggravated identity theft through this forgery, that is an important issue. But that's not really the only issue. So I'm still confused about whether this issue has somehow been forfeited, because there was never a request for a jury instruction that being an agent doesn't count as use. I mean, this argument you're making, the jury wasn't asked, I don't think, to decide whether Berkovich really had the authority to sign on behalf of these inmates or not. So there was a model instruction, right? There's a 1028A model instruction that just uses the use. And up until 4.58 p.m., the night before closing argument, this was never even going to come up, because there was no aiding and abetting on the table. So as of the close of argument on instruction, Mr. Weber was actually very happy with the way the jury instructions were in the case, because he was going to be acquitted. But I think our case law that we have in our circuit basically says aiding and abetting is implied with every charge. So whether he assumed that or not, I'm not quite sure he was correct to assume that. So I guess I'm just – I want to make sure I understand your theory here. How is it that your client didn't aid and abet Mr. Berkovich in this aggravated identity theft? In the forgery. Why he did not aid and abet him. How did he not? Because he did not aid and abet the use, transfer, or possession of the information. Sure. How is it that he didn't? Okay. The inmates themselves filled out these forms and mailed them. Well, you have – your client gathered – was the recruiter of these inmates. Correct. Correct. All right. And he's the one – actually, your client was the one who came up with the scheme. Not entirely correct. There's a way to read that in light of the evidence that was presented. He came up with the scheme. Certainly, Mr. Berkovich had a role as well. And do we know what happened to him? What happened in his – with Mr. Berkovich? He got eight months. Okay. And so then from jail, from prison, your client was directing, according to Mr. Berkovich, Mr. Berkovich what to do. You know, he got the inmates and he'd sit down with the inmates, it sounds like. Sometimes he'd fill out the forms. Sometimes he wasn't. Mr. Weber knew that these individuals didn't make the required money that was needed to get this benefit. He sent all this information to Mr. Berkovich. That's incorrect. Okay. And that's a very important distinction. The whole defense in the case was that Mr. Weber actually never touched any of this identifying information. That it was the inmates themselves who made the decision that they mailed the forms, that they're the ones who transferred their information to Mr. Berkovich. But they were directed by your client. He was a talker. He told them about the program. He knew they weren't entitled to those funds. And he's the one who came up with the scheme, gave them the forms, told them what to fill out, and have it sent to this company that they set up to have the benefits that were illegal. And so I guess I'm just trying to figure out how is it when you say that Mr. Berkovich is going to bet in the aggravated identity theft? Identity theft. Interesting. He's guilty of mail fraud, which you just described as he's guilty of the fraud. No, no. The forgery is the specific identification of the aggravated identity theft. And as far as Mr. Weber knew, Mr. Berkovich was signing just like any tax preparer would sign a tax form in as a perpetrator. He signed on the tax preparer line, though. He signed on the signature line. Mr. Weber. There's no evidence Mr. Weber knew that. Well, you didn't ask the jury to decide anything about that. There was no question posed to the jury about whether he was impersonating the people he was signing for or not. I mean, I think that's true. The model instruction was given. I mean, I think the model instruction, I think, matches our case law, I think. But you're trying to say it shouldn't because there should be this distinction. But then I don't understand why you didn't ask for that distinction to be asked to the jury. Well, again, that gets back to the point about the 4.56 p.m. and why it's problematic when judges are issuing instructions at 7 o'clock at night when you're writing a closing argument after further arguments have been closed. This issue would not have even come up if the aiding and abetting instruction hadn't been given because it was so clear he wasn't guilty as a principal. He never forged anything himself. He never used the information himself. I can't remember. Did your client – did you represent him below? I did. Did you ask for rebuttal or to get more time after the instruction or to do anything like that to account for that? I filed an objection to the aiding and abetting instruction. Yeah. Did you ask for time? Because you just said that it sounds like you were most aggrieved by not having the opportunity to speak about this at closing argument or to fully argument. Did you ask for any time to, you know, prepare or revise your closing argument? I didn't ask for any time to file additional jury instructions. So the answer to my question is no, right? Correct. Thank you. You want to reserve the – well, you're out of time, but I'll give you some time. Okay. Thank you. Thanks. I'm not as tall as my opposing counsel. Good morning, and may it please the Court. Kirsten Alt, the United States. There was ample evidence in this case for the jury to convict Mr. Weber of aggravated identity theft for possessing, transferring, or using the name, social security numbers, and birth dates of three prison inmates for the unlawful purpose of filing false tax returns. As the district court properly instructed the jury, Weber was guilty either as a principal or as an aider and abetter. And as Judge Friedland has recognized, the conviction in this case is perfectly consistent with this Court's case law. The easiest and narrowest ground on which this Court could issue a decision is that Mr. Berkovich forged the signatures of the inmates. The inmates all testified that he did not have their authorization to – I found that for only two of the inmates, and all they said was that they didn't give him authority to sign the return. But there's no question that they knew that a tax return, a fraudulent tax return was going to be filed, and they authorized its filing. Isn't that true? I don't believe so, Your Honor, because I believe what they testified to is they knew that something was going to happen. It was going to involve their taxes. They didn't know entirely what that was, and they were surprised that tax returns were filed on their behalf. So I think that to say that they clearly understood that what was going to happen was that they were going to give this information, that Mr. Berkovich was going to use it to fill out a false tax return, and he was going to forge their signature in order to do this, I think that the testimony is not that clear. I think what the testimony is is that Mr. Weber told them that they could get some free money from the government. It had something to do with their taxes. And if they put their information on this form, he would give them a check. I think that's what the testimony shows. You think the jury thought that they didn't know there was going to be a tax return filed for them? Your Honor, I think it's different. That's a stretch, isn't it? I think it's different for each of the three inmates. I think some of them, the ones who were recruiters, I think they had more knowledge about what was going on. However, some of the inmates didn't have as much knowledge. But it's not particularly relevant whether they knew a tax form was going to be filed. Well, let me ask you a question about that. Let me set it up this way. In some circumstances, one person can use another person's name or identification with consent. You file papers all the time that have the United States Attorney's name on there, and that's perfectly okay. In some circumstances, though, a person cannot use another person's name or identification even with consent. And so, for example, a person cannot submit another person's passport ever, even with consent, and that's what the earlier case establishes. So here's what comes of that. I have not found any case, and I don't think you've cited one. And my question to you is, can you cite any case in which a court has held that using another person's name or identification with consent in a transaction of a type for which consent can lawfully be given is aggravated identity theft? Your Honor, I believe that we have cited cases, not from this circuit, but we have cited a number of cases from the 11th Circuit and the 8th Circuit in which, for example, the Pierre case from the 11th Circuit, 825 F. 3rd, 1183, the defendants used either purchase or stolen inmates' names and Social Security numbers to file false tax returns. Oh, I've presided over two or three of those cases. I understand, but they do it without consent. Your Honor, I believe, and I may be misremembering, but where they purchase the inmates' names, the inmates obviously know that they're selling their names and their Social Security numbers, so arguably that is with consent. All the cases I've had, and I don't remember, that may be my case, all the cases I've had, the prisoner whose identity gets used doesn't get the money. The person doing the fraudulent scheme gets the money. So they steal names of hospital patients and prisoners and anybody that's not likely to file their own tax return and some people who are, so there's no question that's aggravated identity theft. This case is different. They're giving money back to the people whose names are being used. Well, in some cases they are, and in most cases they weren't, Your Honor. In fact, most of the inmates never saw any money from that. These three, that are the only three that matter for aggravated identity theft purposes, got money and knew that their taxes were being submitted to them. Only one of the three, actually, there was a check issued in only one of the three inmates' names, and that person testified that he never actually saw any of that money. So the inmates, although some inmates did get money, I think that the three victims here or the three inmates here, whether they're victims or not, is debatable, they didn't see any money from this scheme. But they thought they were going to. They thought they would, yes, Your Honor. But under Osuna Alvarez, this is all irrelevant because it doesn't matter whether they gave consent or not. But Osuna is on the other side of my dichotomy of two kinds of transactions. Osuna is the case where you can never present somebody else's passport. So if you interpret without lawful authority, meaning it is not lawful to give authority to make that use, then Osuna is perfectly correct. I don't take any issue with Osuna. It's obviously correct. But this is different. I mean, you really do stretch aggravated identity theft beyond anything Congress could possibly have meant to cover, don't you? No, Your Honor. Congress actually cited the filing of false and fraudulent tax returns in the legislative history as one of the things that they were trying to target. But those are the cases I've presided over. I agree with that, but not with consent. Well. Your Honor. Suppose I submit a false return for myself and my wife. Yes, Your Honor. Have I committed aggravated identity theft? You are not pretending to be somebody you are not. You're not pretending to be somebody else. No, I sign a return in both of our names. It's a fraudulent return. Why is it that I mail it in? Because you need to use the identity of another person. My wife's. Her name's on the return. In your scenario, your wife is not in on it. Well, does that matter? That makes it worse, not better for you. Doesn't it matter just whether he signs her name or not? I mean, your position would be if he signs her name, then it is aggravated identity theft, isn't it? If he signs, if he uses her name to commit a fraud, then yes, it is aggravated identity theft. With her consent. And whether I sign her name or not, I'm going to use her Social Security number. So you really do think that everybody who submits a false tax return for oneself and one's spouse commits aggravated identity theft? I haven't given a lot of thought to this scenario, Your Honor. To your minimum mandatory? Yes, Your Honor, because that person is using the identity of someone else. And remember, there's two evils that the aggravated identity theft statute is aimed at. Well, let me give you another example. Business submits a loan application. It's got the names of the board of directors on there as part of the application. It's fraudulent. You mail it in or you submit it to a federally insured bank. So it's bank fraud or mail fraud. And it's got another person's name on there. Aggravated identity theft, to your minimum. Your Honor, if what is happening in that submission is that you are the defendant is using the name of another person in order to commit the fraud, then that is. And that is. All right. Let me give you another one. A case I just presided over. A woman submits a Social Security application, and she says she's got custody of the 12-year-old. Actually, the 12-year-old's gone to live with the father. So she's now committed a Federal crime. She's submitted the Social Security application. I didn't sentence her to two years in prison. There were extenuating circumstances. But if my U.S. attorney had chosen to charge her with aggravated identity theft, to your minimum mandatory, because the daughter's name is on the application. Right? Your Honor, if the name is used to commit the fraud, now there are times. Of course it was. Then that is what the statute punishes. It punishes the use of somebody else's information to commit a crime. In most cases, it's a fraud crime. And the reason for that is twofold. One is to protect the victims from having their identity stolen. The other is to prevent the defendant from using someone else's information to shield their own involvement in the crime. And that is precisely what Mr. Berkovich and Mr. Weber did here. They used the inmates' names, forging their signature to hide their own involvement in the crime. They did not indicate that they were the preparer. They did not put their names anywhere on there to hide from the IRS that they were involved. So that changes my Social Security case? So you're going to have it come out differently because she didn't hide her own identity? No, Your Honor. Well, you're not going to find that in the statute. I don't understand that. Well, if the distinction you're drawing is that you have to be hiding your own identity, that certainly — I mean, there's nothing in the statute that suggests that. I see that I'm out of time. Go ahead and answer the question. Your Honor, that is not — there are two — as I say, there are two purposes. One is to prevent the use of somebody else's information. And the scenario you're giving me is the 12-year-old girl's information to commit a crime. She is being unwittingly or wittingly drawn into this crime. The other is to hide the perpetrator's involvement in the crime. Those are two separate purposes of the statute. In this case, they were using the inmates' identities in part to hide their own involvement in the crime, and that is clearly under Blixt. That is clearly, under this circuit's precedent, a use of the identity. This Court does not need — these are very interesting questions. This Court does not need to get there to decide this case. This Court can decide this case on Blixt alone. You argued that many of the inmates didn't know that a tax return would be filed. Are you counting those inmates to get to five participants for purposes of the sentencing enhancement? No, Your Honor, because I think we can get to the five participants with Mr. Weber, Mr. Berkovich, Ms. Parle, who filed the tax returns, and any two of the eight recruiters that Mr. Berkovich testified to, three of whom testified at trial, that they were involved in the scheme and that they — at least Mr. Weber had told them enough about what was going on that they clearly were involved. Thank you. Thank you. I'll give you two minutes for rebuttal. I just wanted to correct the record in that Mr. Terrell and Mr. Coleman did receive money from the scheme that was deposited into their prisoner account. I think that the Court is seeing the problem here with the potential abuse of this statute. The legislative history is clear on this statute that it was meant to cover stolen identities. And it is a very different situation when there is a non-agency theory presented. So do you think Asuna is wrong? Well, I've preserved that issue, but that's not what's at issue here. What's at issue here is that you're punishing agents, potentially lawful agents, who are using information in a potentially lawful way that is completely different and outside the Asuna context. But everyone involved here knew it wasn't lawful, right? I mean, maybe a few of the inmates didn't know. But they weren't working for the hours that they were reporting this income. I mean, it was false. It was made up. So it's not like there was any possibility of a legal agency here. It was false. But there is a possibility of a legal agency with somebody filing someone else's tax return. That's the context that we're talking about here. That's what troubles me about the ex— Did that happen here? No. The possibility. Did that happen here? There was one or two tax returns that were actually legitimate. Yes. There were people who did actually have wages on the books. Enough to get the— Yes. Almost in exact amounts. And were they one of the people here? Mr. Brunel. Bruning. Excuse me. Mr. Bruning. Yes, there was one. But wait. So you're—but that's not someone who had a charge based on their tax return, was it? That wasn't one of the aggravated identity theft charges. They did not charge the one. I need to get you to help me with—I mean, as you can tell from my questions, I'm not at all sure that it's aggravated identity theft to file a return with somebody else's permission, even if the return is fraudulent. Here's my problem. It's the very first thing Judge Friedland asked about. You didn't ask for an instruction that gave that as the law. In fact, I think you told me that you were very happy with the instructions until they added the aiding and abetting. So let's leave that out of it for just a minute. It seems to me that to rule for you in this case, we have to find that there is no reasonable view of the evidence under which it could be said that the defendant and Mr. Berkovich exceeded the consent they were given. There has to have been something they did without consent. But if there is something they did without consent, then your Rule 29 motion fails, and it's really just a jury instruction problem. I didn't explain that. That was not my best effort. But do you see what I'm asking about? I mean, I do see what the Court is talking about in terms of, you know, the instruction. But it still comes down to sufficiency. It still comes down to a review of sufficiency of the evidence. There's no reasonable way you could construe the evidence that the three inmates at issue did not know exactly what was happening. Two of them said they did not give Berkovich authority to sign their name on the return. If a jury could find that that was a use of the name without permission, wouldn't that lead to a denial of a Rule 29 motion? It might lead to different jury instructions, but you didn't ask for those. Well, I can't go back and I did not ask for jury instructions. There's no doubt I did not. So if that's what it comes down to, there's nothing I can do to change that. But I still urge the Court to then take that next step, which is how is Mr. Weber aiding and abetting that when he has no idea what Berkovich is doing, signing as a preparer, whether he's sending the return back to the inmates to have them sign them and then send them to the IRS. He doesn't know how Mr. Berkovich is affecting the actual filing. And so how is he then aiding and abetting that particular action? So I would ask the Court to take that one extra step on the aiding and abetting. Thank you very much. Thank you both for your very helpful presentations here today. The case of United States v. Howard Weber is now submitted.
judges: Murguia, Friedland, Hinkle